# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| LIGHTING BALLAST CONTROL LLC, § § Plaintiff, § § v. § § UNIVERSAL LIGHTING TECHNOLOGIES, § INC., § § Defendant. § | | CIVIL ACTION NO. 7:09-CV-00029-O **JURY TRIAL DEMANDED** |

## PLAINTIFF'S FIRST AMENDED WITNESS LIST

Plaintiff submits the following First Amended Witness List:

| Name and Address | Subject Matter / Summary of the Testimony | Sworn | Testified |
|---|---|---|---|
| **PROBABLE WITNESSES** | | | |
| **Bobel, Andrzej** c/o Friedman, Suder & Cooke Tindall Square Warehouse No.1 604 East 4th Street, Suite 200 Fort Worth, Texas 76102  Deposed. Expected duration: 1-2 hours. | Mr. Bobel is the inventor of United States Patent No. 5,436,529 ("patent-in-suit"). He is expected to testify regarding the patent-in-suit, including the date of conception of the subject invention, his licensing efforts and knowledge of certain notice and demand letters sent to Defendant, his knowledge of the lighting ballast industry and the development of various circuit designs; his reasons for contacting Acacia Patent Acquisition LLC to assist in enforcing the '529 Patent and his business activities in the lighting ballast industry. | | |
| **Hesterman, Bryce** 4920 McMurry Ave #1-3 Fort Collins, CO 80525  Not deposed. Expected duration: 1 hour. | Mr. Hesterman was an engineer with Magnetek, the predecessor company to ULT. Mr. Hesterman is expected to testify regarding his work on lighting ballasts designs and his knowledge of the '529 patent, including discussions among the engineers relating to the '529 patent. | | |

1

| Name and Address | Subject Matter / Summary of the Testimony | Sworn | Testified |
|---|---|---|---|
| **Patterson, Mark**<br>Waddey & Patterson<br>1600 Division Street, Suite 500<br>Nashville, TN 37203<br><br>Deposed.<br>Expected duration:  20 minutes. | Mr. Patterson is an attorney who has represented Defendant ULT in connection with the prosecution of certain patents, and who communicated with Mr. Bobel regarding his pre-suit claims of infringement by Defendant ULT.  Mr. Patterson is expected to testify regarding the patent-in-suit, his investigation into Mr. Bobel's claims of infringement, and prosecution of ULT patents. | | |
| **EXPERT WITNESSES** | | | |
| **Roberts, Victor**<br>Roberts Research & Consulting<br>3 Garrison Road<br>Burnt Hills, NY 12027<br><br>Deposed.<br>Expected duration:  1 day. | Dr. Roberts is expected to testify regarding the history and evolution of the lighting ballast industry, his evaluation of electronic ballasts, the importance of the '529 Patent in the industry, and Defendant ULT's infringement of the patent-in-suit. Dr. Roberts will testify consistent with his opinions as set forth in his expert report, supplements thereto, declarations in support thereof, and in his deposition. | | |
| **Gallagher, Mark**<br>Duff & Phelps<br>One Atlantic Center<br>1201 W. Peachtree St., Suite 1700<br>Atlanta, Georgia 30309<br><br>Deposed.<br>Expected duration:  1 day. | Mr. Gallagher is expected to testify regarding the damages incurred by Plaintiff as a result of Defendant ULT's infringement of the patent-in-suit.  Mr. Gallagher will testify consistent with his opinions as set forth in his expert report, supplements thereto and during his deposition. | | |
| **Goldstein, Edward**<br>Goldstein & Vowell, L.L.P.<br>1177 West Loop South, Suite 400<br>Houston, TX 77027<br><br>Not deposed.<br>Expected duration:  1-2 hours. | Mr. Goldstein is expected to testify regarding issues of willfulness, including the standard of care required in investigating claims of patent infringement, how the conduct of Defendant ULT deviated from the applicable standard and Defendant's litigation conduct. Mr. Goldstein will testify consistent with his opinions as set forth in his expert report. | | |

| Name and Address | Subject Matter / Summary of the Testimony | Sworn | Testified |
|---|---|---|---|
| **Zane, Regan**<br>c/o Friedman, Suder & Cooke<br>Tindall Square Warehouse No.1<br>604 East 4th Street, Suite 200<br>Fort Worth, Texas 76102<br><br>Deposed.<br>Expected duration: 1 day. | Dr. Zane is expected to testify in rebuttal regarding the validity of the '529 Patent. Dr. Zane will testify consistent with his opinions as set forth in his expert report and during his deposition. | | |
| **POSSIBLE WITNESSES** | | | |
| **Haynes, Clayton**<br>500 Newport Center Dr., Suite 700<br>Newport Beach, CA 92660<br><br>Deposed.<br>Expected duration: 15 minutes. | Mr. Haynes is the CFO of Lighting Ballast Control LLC and CFO of Acacia Research Corporation. He is expected to testify regarding the relationship between Andrzej A. Bobel, Acacia Patent Acquisition LLC and Lighting Ballast Control LLC, as well as the agreements between such parties. | | |
| **Poehlman, Thomas**<br>c/o Steve Routh<br>Orrick, Herrington & Sutcliffe<br>1152 15th Street, N.W.<br>Washington, DC  20005<br><br>Deposed.<br>Expected duration: 15 minutes. | Mr. Poehlman is a ULT engineer and was designated by ULT as its 30(b)(6) representative on all technical matters. He is expected to testify regarding his knowledge of the accused products, his understanding and knowledge of the '529 Patent, and any investigation done by ULT into allegations of infringement of the '529 Patent. | | |
| **Riesmeyer, David**<br>c/o Steve Routh<br>Orrick, Herrington & Sutcliffe<br>1152 15th Street, N.W.<br>Washington, DC  20005<br><br>Deposed.<br>Expected duration: 15 minutes. | Mr. Riesmeyer is the CFO of ULT. He is expected to testify about ULT's views on intellectual property, including its licensing history, ULT's corporate and organizational structure and affiliations, and ULT's strategic business considerations, including its competitors. | | |

| Name and Address | Subject Matter / Summary of the Testimony | Sworn | Testified |
|---|---|---|---|
| **Dilling, Mark**<br>c/o Steve Routh<br>Orrick, Herrington & Sutcliffe<br>1152 15th Street, N.W.<br>Washington, DC  20005<br><br>Deposed.<br>Expected duration:  15 minutes. | Mr. Dilling is ULT's Director of Financial Analysis.  He is expected to testify about ULT's customer base, its financial statements, revenues, profits, and accounting practices as it relates to U.S. Sales of the accused products, its corporate and organizational structure and history, its strategic considerations relating to profitability, and its views of intellectual property. | | |

**Dated:   June 1, 2011.**                                                       Respectfully submitted,

/s/ Jonathan T. Suder
State Bar No. 19463350
David A. Skeels
State Bar No. 24041925
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
(817) 334-0400
(817) 334-0401 (fax)
jts@fsclaw.com
skeels@fsclaw.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of June, 2011, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, Wichita Falls Division, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Jonathan T. Suder

n:\clients\mj\lighting ballast\trial\witness list\witness list - first amended.docx



US007844282B1

## (12) United States Patent
### Tendler

(10) Patent No.: **US 7,844,282 B1**
(45) Date of Patent: **Nov. 30, 2010**

(54) **LOCATION BASED INFORMATION SYSTEM**

(76) Inventor: **Robert K. Tendler**, 19 Lawrence Ave., Chestnut Hill, MA (US) 02467

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 185 days.

(21) Appl. No.: **12/284,592**

(22) Filed: **Sep. 22, 2008**

### Related U.S. Application Data

(60) Division of application No. 11/827,313, filed on Jul. 11, 2007, now Pat. No. 7,447,508, which is a division of application No. 11/345,920, filed on Feb. 2, 2006, now Pat. No. 7,305,243, which is a continuation of application No. 10/347,991, filed on Jan. 21, 2003, now Pat. No. 7,050,818, which is a continuation of application No. 08/608,482, filed on Feb. 28, 1996, now Pat. No. 6,519,463.

(51) Int. Cl.
*H04W 24/00* (2009.01)
(52) U.S. Cl. .................. **455/456.2**; 455/404.2; 455/408
(58) Field of Classification Search .................. None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,070,112 A | 2/1937 | Bowles |
| 2,348,393 A | 5/1944 | Krieger |
| 3,142,227 A | 7/1964 | Stringer |
| 3,199,108 A | 8/1965 | Munk |
| 3,266,042 A | 8/1966 | Mahoney et al. |
| 3,317,698 A | 5/1967 | Mansfield |
| 3,581,208 A | 5/1971 | Buehrle, Jr. et al. |
| 3,666,901 A | 5/1972 | Weinhart |
| 3,723,876 A | 3/1973 | Seaborn, Jr. |
| 3,824,469 A | 7/1974 | Ristenbatt |
| 3,845,389 A | 10/1974 | Phillips et al. |
| 3,889,190 A | 6/1975 | Palmer |
| 3,977,003 A | 8/1976 | Kershaw |
| 4,032,844 A | 6/1977 | Imazeki |
| 4,057,794 A | 11/1977 | Grossfield |
| 4,176,254 A | 11/1979 | Tuttle |
| 4,198,601 A | 4/1980 | Ono et al. |
| 4,232,390 A | 11/1980 | McEvilly, Jr. |
| 4,232,391 A | 11/1980 | Zanutti |
| 4,357,711 A | 11/1982 | Drefko et al. |
| 4,394,552 A | 7/1983 | Schlosser |
| 4,435,711 A | 3/1984 | Ho et al. |
| 4,455,551 A | 6/1984 | Lemelson |

(Continued)

FOREIGN PATENT DOCUMENTS

EP 0559074 9/1993

(Continued)

OTHER PUBLICATIONS

Comments relative to litgation file of *Tendler Cellular of Texas, LLC v AT&T Mobility, LLC et al*. Civil Action 6:09-cv-115, Eastern Distrric of Texas, Tyler Division, May 3, 2010.

(Continued)

*Primary Examiner*—Erika A Gary
(74) *Attorney, Agent, or Firm*—Robert K. Tendler

(57) **ABSTRACT**

A wireless device-based system provides location-based services by determining the location of the wireless device and arranges for the service and the payment therefor.

**32 Claims, 3 Drawing Sheets**



US 7,844,282 B1

Page 2

U.S. PATENT DOCUMENTS

| Patent No. | Kind | Date | Inventor |
|---|---|---|---|
| 4,468,656 | A | 8/1984 | Clifford et al. |
| 4,494,119 | A | 1/1985 | Wimbush |
| 4,517,410 | A | 5/1985 | Williams et al. |
| 4,520,576 | A | 6/1985 | Vander Molen |
| 4,524,461 | A | 6/1985 | Kostanty et al. |
| 4,534,056 | A | 8/1985 | Feilchenfeld et al. |
| 4,547,778 | A | 10/1985 | Hinkle et al. |
| 4,560,978 | A | 12/1985 | Lemelson |
| 4,589,132 | A | 5/1986 | Botbol et al. |
| 4,606,073 | A | 8/1986 | Moore |
| 4,607,395 | A | 8/1986 | Sundahl |
| 4,622,557 | A | 11/1986 | Westerfield |
| 4,653,100 | A | 3/1987 | Barnett et al. |
| 4,680,787 | A | 7/1987 | Marry |
| 4,700,374 | A | 10/1987 | Bini |
| 4,724,538 | A | 2/1988 | Farrell |
| 4,748,685 | A | 5/1988 | Rozanski, Jr. |
| 4,792,968 | A | 12/1988 | Katz |
| 4,831,438 | A | 5/1989 | Bellman, Jr. et al. |
| 4,833,477 | A | 5/1989 | Tendler |
| 4,833,726 | A | 5/1989 | Shinoda et al. |
| 4,845,739 | A | 7/1989 | Katz |
| 4,903,262 | A | 2/1990 | Dissosway et al. |
| 4,905,289 | A | 2/1990 | Micic et al. |
| 4,924,491 | A | 5/1990 | Compton et al. |
| 4,928,107 | A | 5/1990 | Kuroda et al. |
| 4,931,950 | A | 6/1990 | Isle et al. |
| 4,974,250 | A | 11/1990 | Tomiyori |
| 5,014,298 | A | 5/1991 | Katz |
| 5,019,828 | A | 5/1991 | Schoolman |
| 5,027,352 | A | 6/1991 | Goode |
| 5,027,409 | A | 6/1991 | Sakamoto |
| 5,043,736 | A | 8/1991 | Darnell et al. |
| 5,047,953 | A | 9/1991 | Smallwood et al. |
| 5,073,929 | A | 12/1991 | Katz |
| 5,074,317 | A | 12/1991 | Bondell et al. |
| 5,081,667 | A | 1/1992 | Drori et al. |
| 5,086,391 | A | 2/1992 | Chambers |
| 5,091,950 | A | 2/1992 | Ahmed |
| 5,095,509 | A | 3/1992 | Volk |
| 5,109,399 | A | 4/1992 | Thompson |
| 5,113,481 | A | 5/1992 | Smallwood et al. |
| 5,119,505 | A | 6/1992 | Tisseront et al. |
| 5,140,632 | A | 8/1992 | Anten |
| 5,142,700 | A | 8/1992 | Reed |
| 5,144,323 | A | 9/1992 | Yonkers |
| 5,148,002 | A | 9/1992 | Kuo et al. |
| 5,148,452 | A | 9/1992 | Kennedy et al. |
| 5,193,215 | A | 3/1993 | Olmer |
| 5,198,831 | A | 3/1993 | Burrell et al. |
| 5,223,844 | A * | 6/1993 | Mansell et al. ......... 342/357.07 |
| 5,224,153 | A | 6/1993 | Katz |
| 5,225,843 | A | 7/1993 | Thompson |
| 5,235,633 | A | 8/1993 | Dennison et al. |
| 5,249,223 | A | 9/1993 | Vanacore |
| 5,266,958 | A | 11/1993 | Durboraw, III |
| 5,309,546 | A | 5/1994 | Baker et al. |
| 5,311,197 | A | 5/1994 | Sorden et al. |
| 5,334,974 | A | 8/1994 | Simms et al. |
| 5,343,493 | A | 8/1994 | Karimullah |
| 5,345,244 | A | 9/1994 | Gildea et al. |
| 5,347,286 | A | 9/1994 | Babitch |
| 5,355,140 | A | 10/1994 | Slavin et al. |
| 5,359,645 | A | 10/1994 | Katz |
| 5,365,450 | A | 11/1994 | Schuchman et al. |
| 5,377,256 | A | 12/1994 | Franklin et al. |
| 5,388,147 | A | 2/1995 | Grimes |
| 5,403,197 | A | 4/1995 | Ernst et al. |
| 5,404,577 | A | 4/1995 | Zuckerman et al. |
| 5,410,749 | A | 4/1995 | Siwiak et al. |
| 5,414,432 | A | 5/1995 | Penny, Jr. et al. |
| 5,414,756 | A | 5/1995 | Levine |
| 5,432,841 | A | 7/1995 | Rimer |
| 5,434,904 | A | 7/1995 | Tsuzuki et al. |
| 5,479,482 | A | 12/1995 | Grimes |
| 5,495,416 | A | 2/1996 | Buchwitz et al. |
| 5,515,043 | A | 5/1996 | Berard et al. |
| 5,519,403 | A | 5/1996 | Bickley et al. |
| 5,546,445 | A | 8/1996 | Dennison et al. |
| 5,548,801 | A | 8/1996 | Araki et al. |
| 5,552,993 | A | 9/1996 | Buchwitz et al. |
| 5,553,125 | A | 9/1996 | Martensson |
| 5,555,286 | A | 9/1996 | Tendler |
| 5,557,254 | A | 9/1996 | Johnson et al. |
| 5,561,704 | A | 10/1996 | Salimando |
| 5,579,535 | A | 11/1996 | Orlen et al. |
| 5,587,715 | A | 12/1996 | Lewis |
| 5,594,453 | A | 1/1997 | Rodal et al. |
| 5,598,460 | A | 1/1997 | Tendler |
| 5,604,790 | A | 2/1997 | Grimes |
| 5,604,794 | A | 2/1997 | Vogel et al. |
| 5,630,206 | A | 5/1997 | Urban et al. |
| 5,649,059 | A | 7/1997 | Tendler et al. |
| 5,650,770 | A | 7/1997 | Schlager et al. |
| 5,652,570 | A | 7/1997 | Lepkofker |
| 5,673,305 | A | 9/1997 | Ross |
| 5,675,371 | A | 10/1997 | Barringer |
| 5,736,962 | A | 4/1998 | Tendler |
| 5,740,538 | A | 4/1998 | Joyce et al. |
| 5,748,147 | A | 5/1998 | Bickley et al. |
| 5,768,382 | A | 6/1998 | Schneier et al. |
| 5,778,315 | A | 7/1998 | Proietti |
| 5,786,789 | A | 7/1998 | Janky |
| 5,794,151 | A | 8/1998 | McDonald et al. |
| 5,799,061 | A | 8/1998 | Melcher et al. |
| 5,835,907 | A | 11/1998 | Newman |
| 5,963,861 | A | 10/1999 | Hanson |
| 5,999,808 | A | 12/1999 | LaDue |
| 6,049,711 | A | 4/2000 | Ben-Yehezkel et al. |
| 6,397,057 | B1 | 5/2002 | Malackowski et al. |
| 6,519,463 | B2 | 2/2003 | Tendler |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| GB | 2246910 | 2/1992 |
| WO | WO-93/16452 | 8/1993 |

OTHER PUBLICATIONS

Litigation file of *Tendler Cellular of Texas, LLC* v *AT&T Mobility, LLC et al.* Civil Action 6:09-cv-115, Eastern District of Texas, Tyler Division, Jul. 23, 2009.

Continuing ltigation file as of Jul. 16, 2010 of *Tendler Cellular of Texas, LLC* v *AT&T Mobility, LLC et al.* Civil Action 6:09-cv-115, Eastern District of Texas, Tyler Division.

This will supplement the IDS filed Apr. 13, 2010 and May 3, 2010 and includes cited references.

OnStar's Preliminary Invalidity Contentions and Accompanying Document Production Pursuant To Patent Rules 3-3 and 3-4 (with exhibits)—from *Tendler Cellular, Inc.* v *OnStar Corporation*, Eastern District Court of Texas Civil Action No. 6:06-cv-560, Nov. 9, 2007.

\* cited by examiner



Fig. 1



Fig. 2



Fig. 3

1

# LOCATION BASED INFORMATION SYSTEM

## RELATED APPLICATIONS

This application is a Division of application Ser. No. 11/827,313 filed Jul. 11, 2007, now U.S. Pat. No. 7,447,508 which is a Division of application Ser. No. 11/345,920, filed on Feb. 2, 2006, now U.S. Pat. No. 7,305,243 which is a continuation of application Ser. No. 10/347,991 filed on Jan. 21, 2003, now U.S. Pat. No. 7,050,818, which is a continuation of application Ser. No. 08/608,482 filed on Feb. 28, 1996, now U.S. Pat. No. 6,519,463.

## FIELD OF INVENTION

This invention relates to a system for providing assistance to wireless device users, and more particularly, to a wireless device and location-based information system.

## BACKGROUND OF THE INVENTION

As is now common, central dispatch offices are utilized in the provision of roadside assistance through the utilization of an 800 number. Upon dialing a predetermined 800 number from a wireless phone such as a cellular phone, the central dispatch office, through the utilization of its database, can direct the motorist to a variety of different services. For instance, the central dispatch service can provide information as to the nearest towing service, the nearest gas station, the nearest theatre, the nearest drug store, or, in fact, any service of interest to the motorist for which the dispatch office has information in its database.

Moreover, with databases utilized at the central dispatch office, it is possible to keep medical records of individuals owning the phone on file so that in the case of a vehicular accident, these files can be accessed and the appropriate information can be given to rescue authorities.

One of the major drawbacks with the respect to such a system is that there is currently no easily implemented way to provide information as to the whereabouts of a vehicle. While, GPS-based systems exist for in-car mapping and other position related applications, such a system is not readily available to every motorist without an extensive retrofit of the vehicle and corresponding cell sites, making such systems infrastructure intense. It is in fact a daunting task to be able to provide GPS-based services by providing a GPS receiver in every motor vehicle, much less on a cost effective basis. Thus, it is only with reluctance that automobile manufacturers are providing automobiles with GPS receivers and antennas.

## SUMMARY OF INVENTION

In the subject system, the problem of providing a cost effective means of providing roadside or other services is implemented by informing central dispatch offices of the location of a vehicle through the utilization of a wireless phone having an associated GPS receiver, antenna, and voice synthesis capability for transmitting not only the identity of the vehicle, but also the location of the vehicle in English or other spoken language.

In one embodiment, the phone is located in a handsfree cradle having service-request buttons to cause the phone to dial the central dispatch office with a service request and location of the phone. Through a synthetic voice announcement, when the phone calls the central dispatch office, the verbally announced information is processed by an operator, at which point the latitude and longitude of a vehicle is recorded. The central dispatch office then correlates the position of the vehicle with the services requested, with a match being performed to provide the identity and/or address of the nearest local service provider either to the dispatch operator or to the operator of the motor vehicle.

Thus, when traveling in unfamiliar territory, one need only press a button on the handsfree cradle of the phone, at which point the central dispatch office is dialed, and after synthetic voice communication with the dispatch office to indicate the location of the vehicle, two way verbal communication may be established to permit the driver to ask for whatever service he or she wants. This can be taken care of by the dispatch office, or the caller can be directly linked or patched to the service provider. Alternatively, the handsfree cradle may be provided with a number of different service related buttons such as "Gas Station," "Pharmacy," "Food," etc. so that these service providers are directly dialed.

As will be appreciated, the subject system provides the central dispatch office not only with the location of the caller, but also the nature of the requested service. This being the case, should a motorist be in an unfamiliar city and seek a particular service, with the touch of a button, the wireless phone is made to dial the central dispatch office, which in turn can either route the call to the appropriate service provider, or provide information back to the motorist so that the motorist can be directed to the service provider and/or the contact the service provider himself.

In one embodiment, the wireless phone is available as a unitary device with service-request buttons thereon. Alternatively, when utilized in a vehicle, the phone may be placed in the aforementioned handsfree cradle that has one or more service-request buttons on the cradle.

Note that in one embodiment, the cradle is provided with a passive transfer antenna to couple the relatively weak GPS signals from an active GPS antenna mounted outside the car to the internally carried GPS antenna in the phone. The result is to be able to receive the relatively weak GPS signals within the body of the vehicle through the utilization of the transfer antenna, with the transfer antenna being mounted at the handsfree cradle adjacent the GPS antenna that is carried by the unitary phone.

The abovementioned handsfree cradle communicates the fact of a service-request button push to a printed circuit board within the phone, with the printed circuit board carrying a CPU, a speech synthesizer and a dialer. The board is connected to the phone bus which is also connected to the handsfree cradle such that when the phone is placed in the handsfree cradle, the service-request buttons cause the phone to dial the appropriate number with the appropriate message and position of the phone. As a result, with a single button push at the handsfree cradle, one or more services can be requested through the corresponding switch closure being transmitted to the CPU on the printed circuit board within the phone. When the switch closure is sensed, the phone is made to dial a predetermined number followed by transmission of the corresponding message.

It will be appreciated that any number of service-request buttons may be placed on the handsfree cradle such that the nearest gas station, the nearest pharmacy, or the nearest grocery store can be requested through the dialing of a separate number associated with each of the buttons. In another embodiment, a single "Concierge" button is provided to enable the central dispatch office to call the appropriate service provider directly, and as an added service, pass the call through to the service provider. As such a location-dependent concierge service is provided. In summary, either through a single Concierge button or with multiple specific service-

| 3 | 4 |

request buttons, the motorist can be given the services that he or she desires due to the provision of the caller's location from a GPS receiver at the phone.

It will be appreciated that the service can be provided either by the central dispatch office which takes care of the individual needs of the motorist, or the motorist can merely be put in touch with the service provider through a direct link of the cell phone call to the service provider. What will be apparent is that regardless of the form the service takes, the transmission of latitude and longitude provides a unique way of selecting the closest service provider.

While the subject invention relates to wireless phones in general, for convenience, the remainder of the description of the invention will center on its use with cellular phones. It will be appreciated that utilizing an existing cellular telephone and an internally carried GPS engine also solves the problem of economically providing a GPS receiver within a vehicle, since the cost of the cellular phone along with the GPS receiver is bourn by the carrier and ultimately by the consumer on a monthly charge basis. The above enables a cost effective method of providing roadside assistance, while at the same time providing normal cellular communication through the utilization of a standard cellular phone modified with the GPS-based location system. The above also permits emergency signaling to public service access points or PSAPs as to the location of an accident or other emergency.

As will be seen, in one embodiment a unitary cellular phone is provided with an internal GPS engine, an internal GPS antenna, and an internal printed circuit board having a speech synthesizer for providing a verbal rendition of the latitude and longitude of the cellular phone, along with a dialer which is coupled to the cell phone bus to control the functioning and the modulation of the cellular phone.

While the above has described a unitary cellular phone with a GPS receiver, a speech synthesizer, a CPU and a GPS antenna within the cellular phone, in an alternative embodiment, the GPS receiver, the location/speech circuit including speech synthesizer and CPU, and an external GPS antenna may be provided in the above-mentioned handsfree cradle. In this embodiment, circuits within the cradle cause the phone to dial and provide modulation of the phone with a verbal message through the normal bus structure of the cellular phone. As a result, standard cellular phones can be modified through the utilization of such a handsfree cradle to provide the needed location function.

It will, therefore, be appreciated that the GPS receiver and the speech synthesizer and dialer board may be carried in the handsfree cradle rather than within the cellular phone. The information from the GPS unit is provided, in this instance, to the CPU that is coupled to the speech synthesizer which couples the speech synthesizer output to the microphone input to the cell phone bus. The dialer board causes the phone to dial the indicated number by appropriate signaling over the cell phone bus. In this manner, by providing a handsfree cradle with a GPS receiver and speech and dialer board, vehicles can be retrofitted readily and inexpensively to provide a location-dependent request for services.

Whether the cellular telephone is a unitary device or whether the GPS receiver and other circuitry are built into the handsfree cradle, a cost effective system is provided to enable dispatch offices to correlate the position of a vehicle with the service required.

While the above has been described in connection with vehicle related services, it will be appreciated that taking the cellular phone out of the car and providing it with a service-request button can provide the non-motorist with a means of obtaining services that the individual might want. For instance, when a pedestrian in an unfamiliar city is seeking the nearest drug store, a Concierge button on the unitary cellular phone can provide the central dispatch office with the same information as described above, regardless of whether or not the GPS-based cellular phone is within a vehicle.

It will also be appreciated, while the subject system has been described in connection with a synthetic voice annunciation of the position of the phone, digital systems involving digital signaling of the same information are within the scope of this invention.

In summary, a wireless phone based system is provided to accommodate users of phones for transmitting information as to the location of certain services such as gasoline stations, movie theatres, drug stores, etc., in which the phone includes a GPS receiver with the phone adapted to call a predetermined number requesting the desired service and providing the location of the phone. In one embodiment for vehicular applications, the GPS receiver is co-located with the phone, with the phone being carried in a handsfree cradle having a number of service-request buttons, such that depression of a service-request button activates the phone through its bus structure to call a predetermined number and provide the identity of the caller along with the caller's location. In a further embodiment, a single button is utilized to cause the phone to dial a concierge service, in which the concierge service has operators and a database, such that the operator to direct the caller to whatever service the caller desires having been apprised of the location of the phone, this to allow the operator can key in the latitude and longitude of the phone and access the database of services both as to the type of service and as to the location of the closest service provider.

BRIEF DESCRIPTION OF THE DRAWINGS

These and other features of the subject invention will be better understood taken in conjunction with the Detail Description in conjunction with the Drawings of which:

FIG. 1 is a diagrammatic and block diagram of the subject system illustrating the utilization of the cellular phone/GPS combination to transmit the location of the cellular phone to a central dispatch office for the provision of location-dependent services;

FIG. 2 is a diagrammatic illustration of a cellular phone housing a GPS receiver, GPS antenna, and speech and dialer board for the control and the modulation of the cellular phone as well as a service-request button coupled to the CPU/speech/dialer board for providing a unitary device; and,

FIG. 3 is a block diagram of the speech and dialer board of FIG. 2 illustrating its connection to RF and audio circuitry within the cellular phone.

DETAILED DESCRIPTION

Referring now to FIGS. 1 and 2, a cellular phone 10 within a vehicle 12 includes an internal GPS antenna 14 coupler to a GPS receiver 16, with the output of the GPS receiver coupled to a speech and dialer board 18 carried within the upper portion of cellular phone 10.

In the illustrated embodiment, cellular phone 10 is carried within a handsfree cradle 20 to which is attached the traditional handsfree microphone 22 and to which is coupled to an external speaker 24 as well as a vehicle mounted cellular phone antenna 26. Also carried within handsfree cradle 20, is transfer antenna 28 in close proximity to GPS antenna 14, with transfer antenna 28 coupled to an external active GPS antenna 30 which is powered by the vehicle battery as shown at 32.

Handsfree cradle **20** is conveniently located adjacent vehicle console **34** and carries a number of service request buttons **36**, **38**, **40**, and **42**, corresponding respectively as illustrated to a request for gas station location, drug store location, movie theatre location, and food services location Also located on handsfree cradle **20**, is a CONCIERGE button **44**, which is utilized to obtain concierge services from a central office dispatch center as will described.

Each of buttons **36-44** is utilized to cause cellular phone **10** to dial a predetermined number when the corresponding button is depressed. This is accomplished through the cellular phone bus, with buttons **36-44** coupled to an internally carried interface board **46** that, upon sensing a switch closure, provides a suitable signal to the bus between it and the cellular phone for causing the cellular phone to dial a predetermined number.

The result of the depression of any one of the service-request buttons is the activation of the cellular phone to dial the predetermined number and to transmit the requisite information either verbally or digitally that there is a service request, the vehicle number, the latitude and longitude of the cell phone as sensed by the GPS receiver, along with the cellular phone number for both billing and call-back purposes.

It will be appreciated that once having established contact with a central office dispatch center, not only is the particular service request known, but operators at the dispatch center can talk directly with the requesting individual.

In order for this to be accomplished, a dispatch center generally indicated by reference character **50** includes a telephone **52** coupled to a local exchange **54** which is in turn coupled to a cell site **56** by a land line **58**, such that the location of the cell phone is made known to the central office dispatch center.

What is received at the central office dispatch center is a service request, the position of the cellular phone placing the service request, a vehicle identification number, if desired, and the cellular phone number of the cellular phone initiating the call.

While the following operation may be automatically implemented, the subject system will described in terms of the synthesized voice verbal annunciation of the service request, position, vehicle identification number and cell phone number, as reported to an operator at the central office dispatch center.

Upon receipt of a call, the operator types in the service request, the latitude and longitude, and, optionally, the vehicle identification number and cell phone number at a keypad **60** which encodes the service request at **62** and the position at **64**, the indicated data being coupled to a CPU **66** which accesses a database **68**. The database has incorporated therein the location of the particular service provider, the services rendered by the service provider, and, optionally, the availability of the service provider, the rates for the service, and any other information useful in the provision of the service.

Since database **68** contains the location of the service provider, this is correlated with the position of the cellular phone as generated at **64**, with a unit **70** selecting the closest service provider for the particular service requested. The option then is to switch the call from the cellular phone directly to the service provider via switch **72** so that the caller of the services may be directly patched to the service provider. Alternatively, the central office dispatch center may be interfaced with the service provider directly such that the dispatch center places a call at **74** to the particular service provider.

In any event, the closest service provider is identified and is contacted either by the caller or the dispatch center so that the requisite services can be rendered. Because the cellular phone number or the vehicle identification number or both are provided to the central dispatch office, charges for the cellular based service request may be invoiced to the caller.

For convenience, a monitor **76** may be provided with maps **78** on which the location of the caller, in this case vehicle location **80**, is depicted by a cursor **82**. In this manner, the operator at the central office dispatch center can track the progress of the vehicle and can verbally communicate with the service provider as to the location of the caller.

It is also possible that database **68** have incorporated therein medical information of the owner of the cellular phone so that emergency services can be dispatched from the central dispatch office. For this purpose, an emergency button **84** is provided under a protective cover **86** which when pushed can either be made to dial 911 directly, or can be made to dial the dispatch center. The information transmitted from the cellular phone to the central office dispatch center, would thus, be a "MAYDAY" request followed by latitude and longitude to enable the central dispatch office to call the appropriate authorities.

Referring now to FIG. **2**, cell phone **10** is shown as incorporating GPS receiver or engine **16**, with speech and dialer board **18** being located ahead of the GPS engine. As can be seen, emergency button **84** is mounted to the speech and dialer board, with cover **86** being in place over emergency button **84** to prevent accidental actuation. As pictured, GPS antenna **14** is coupled to GPS engine **16** via connector **88**, with location information coming from GPS engine **16** to speech and dialer board **18** via the NEMA 0183 bus **90**. Also as depicted, a bus **92** runs between speech and dialer board **18** to cellular phone **10** for the control thereof and the modulation and the modulation section thereof.

If the system is to be provided as a unitary device, phone **10** is provided with one or more service-request buttons **94** coupled to speech and dialer board **18** via line **96**. This avoids having to provide a handsfree cradle and makes the service-request system completely portable.

Referring now to FIG. **3**, cellular phone **10**, in general, has RF circuitry **100** and audio/digital circuitry **102** for the provision of cellular phone calls. Speech and dialer board **18** includes CPU **104** which includes a hardware UART **106** and a software UART **108**, with CPU **104** being coupled to a speech synthesizer **107** for the purpose of providing the requisite service-request message via an audio line **108** through an audio mixer **110** to an audio in terminal **112** of the audio/digital circuitry. An $E.\sup{2}$ ROM **114** is utilized to store the preprogrammed telephone numbers and other data that is used by CPU **104** to control the operation of cell phone **10** through its audio/digital circuitry **102**. For this purpose, a TX data line **116** is provided to control the dialer section and all phone related functions for cellular phone **10**.

It will be appreciated that CPU **104** provides control of speech synthesizer **107** via control lines **120**, with a crystal **122** providing the speech clock.

Automatic turn-on of the cellular phone upon depression of a service-request button, is accomplished through a power enable transistor circuit **124** which is utilized to turn on the cellular phone, with the power being derived from phone battery **126** as illustrated. Note that the turning off of switched power by virtue of the turn off of the cellular phone is sensed by transistor circuitry generally illustrated at **128** so that CPU **104** can be placed in its low power drain mode.

As illustrated, handsfree cradle **20** has a cradle connector **130** to which service request buttons **36**, **38**, **40** and **44** may be

7

connected. These service requests are coupled to CPU **104** via software UART **108** over TX data line **132** so as to cause CPU **104** to initiate the appropriate service requests and to cause cell phone **10** to dial the appropriate number.

In the programming of E-PROM **114**, an audio output of speech synthesizer **107** is utilized to drive an internal speaker of cell phone **110**, not shown, via speaker driver **134** controlled by CPU **104** via volume control **136**.

Also provided as inputs to CPU **104** is the aforementioned emergency button switch **84**, a test button switch **144**, an enter button switch **146**, and a program switch **148** for the testing of the system and for the entering of predetermined numbers into E.sup.2 ROM **114**.

Also provided at the cell phone is an LED indicator **140** driven by transistor circuit **142** to indicate at the cell phone that a GPS fix has been achieved.

A receiver mute line **150** is provided from cradle **130** for muting car-mounted broadcast receivers, and an ignition sense line **152** is provided for informing the cellular phone that the handsfree cradle has been connected. A speaker out line **154** is provided from the cellular phone to the handsfree cradle for driving speaker **24** and a backup switch protection line **156** is provided for both informing CPU **104** that there is a call in progress and to provide this information to the handsfree cradle.

The call-in-progress line **156**, called the; "back-up switch line," is utilized by CPU **104** to request further services, in the form of a 911 back-up call when after the 911 button has been pushed, the call has been terminated to the PSAP. The falling of the call-in-progress flag causes CPU **104** to have cell phone **10** dial a central office dispatch number with a specialized type of emergency service request. In one embodiment, the service request is to have the operators at the dispatch center first call the cellular phone to see if emergency services have been dispatched, and then to call the particular PSAP involved to assure that services have been rendered.

It will be appreciated that the system described in connection with FIG. **3** incorporates all of the functions on an internally carried speech and dialer board **18** carried within cell phone **10**. However, as mentioned above, the entire function of the CPU, and in fact, the GPS receiver and active patch antenna can be carried within handsfree cradle **10** so that all that is necessary to initiate the call is controlling the normal cellular phone bus from the handsfree cradle.

However, providing all functions in the unitary phone results in the ability to request services from a unitary device without having to provide a handsfree cradle. As such, the subject system incorporates the concept of providing services regardless of whether or not the cellular phone is in a vehicle.

Having above indicated a preferred embodiment of the present invention, it will occur to those skilled in the art that modifications and alternatives can be practiced within the spirit of the invention. It is accordingly intended to define the scope of the invention only as indicated in the following claims.

The invention claimed is:

1. In a wireless phone based system, a system for delivery of a requestable location-based service to be charged to the wireless phone user, comprising:
a wireless phone including a GPS receiver for receiving GPS signals and a GPS antenna, said wireless phone adapted to be activated to place a call to an entity that arranges for delivery of said location-based service, said wireless phone adapted to be operated on a wireless network and having a number associated therewith, said wireless phone having a transmitter responsive to GPS signals for transmitting to said entity via said wireless

8

network a signal useful in determining the geophysical location of said wireless phone and said number, said entity arranging for delivery of said location-based service responsive to said transmitted signal and arranging for charging of said user at least in part for the requesting of the location-based service or for the requested service, said charging based on said transmitted number, said entity including the owner of said wireless network.

2. The system of claim **1**, wherein said wireless phone has a switch that causes said transmitter to transmit said signal useful in determining the geophysical location of said wireless phone.

3. The system of claim **1**, and further including a separate switch that upon activation causes a separate signal to be transmitted by said transmitter indicative of the location-based service requested.

4. The system of claim **1**, wherein the requestable services and for which the user is in part charged are taken from the group consisting of emergency services, towing services, geophysical locations providing services and tracking services.

5. The system of claim **1**, wherein said entity includes an office for arranging for the provision of the location-based service.

6. The system of claim **1**, wherein said entity includes a towing company.

7. The system of claim **1**, wherein said entity includes a tracking company.

8. The system of claim **7**, wherein said tracking company includes a vehicle tracking company.

9. In a wireless phone based system, a system for delivery of a requestable location-based service to be charged to the wireless phone user, comprising:
a wireless phone having a GPS receiver, said wireless phone adapted to be activated to place a call to an entity that arranges for delivery of said location-based service, said phone adapted to be operated by a user on a wireless network and having a number associated therewith, said wireless phone having a transmitter for transmitting to said entity via said wireless network a signal based on GPS location useful in determining the geophysical location of said wireless phone and said number, said entity arranging for delivery of said location-based service responsive to said transmitted signal and for arranging charging said user at least in part for the requested location-based service or the arranging therefor, said charging being based on said number, said entity including the owner of said wireless network.

10. The system of claim **9**, wherein said wireless phone has a switch that causes said transmitter to transmit said signal useful in determining the geophysical location of said wireless phone.

11. The system of claim **9**, and further including a separate switch that upon activation causes a separate signal to be transmitted by said transmitter indicative of the location-based service requested by the user.

12. The system of claim **11**, wherein the services requestable by the activation of said switch are taken from the group consisting of emergency services, towing services, geophysical location-providing services and tracking services.

13. The system of claim **9**, wherein said entity includes an office for arranging for the provision of the location-based service.

14. The system of claim **9**, wherein said entity includes a towing company.

15. The system of claim **9**, wherein said entity includes a tracking company.

16. The system of claim **15**, wherein said tracking company includes a vehicle tracking company.

17. In a wireless system, a system for delivery of a requestable location-based service to be charged to the wireless user, comprising:

a wireless device having a GPS receiver, said wireless device adapted to be activated to place a call to an entity including the owner of a wireless network for arranging for delivery of said location-based service, said wireless device adapted to be operated by a user on said wireless network and having a number associated therewith, said wireless device having a transmitter for transmitting to said entity via said wireless network a signal based on GPS location useful in determining the geophysical location of said wireless device and said number, said entity arranging for delivery of said location-based service responsive to said transmitted signal and for arranging charging of said user at least in part for the requesting of the location-based service or for the requested service, said charging being based on said number.

18. The system of claim **17**, wherein the wireless device includes a switch that causes said transmitter to transmit said signal useful in determining the geophysical location of said wireless device.

19. The system of claim **17**, and further including a separate switch that upon activation causes a separate signal to be transmitted by said transmitter indicative of the location-based service requested by the user.

20. The system of claim **17**, wherein the services requestable by the activation of said switch and for which the user is in part charged are taken from the group consisting of emergency services, towing services, position-indicating services and tracking services.

21. The system of claim **17**, wherein said entity includes an office for arranging for the provision of the location-based service.

22. The system of claim **17**, wherein said entity includes a towing company.

23. The system of claim **17**, wherein said entity includes a tracking company.

24. The system of claim **23**, wherein said tracking company includes a vehicle tracking company.

25. In a wireless system, a system for delivery of a requestable location-based service to be charged to an individual requesting said location-based service, comprising:

A wireless device having a GPS receiver, said wireless device adapted to be activated to place a call to an entity that arranges for delivery of said location-based service, said wireless device adapted to be operated on a wireless network and having a number associated therewith, said wireless device having a transmitter for transmitting to said entity via said wireless network a signal based on GPS location useful in determining the geophysical location of said wireless device and said number, said entity arranging for delivery of said location-based service responsive to said transmitted signal and for arranging charging of said individual at least in part for the requesting of the location-based service or for the requested service, said charging being based on said number, said entity including the owner of said wireless network.

26. The system of claim **25**, wherein the wireless device includes a switch that causes said transmitter to transmit said signal useful in determining the geophysical location of said wireless device.

27. The system of claim **25**, and further including a separate switch that upon activation causes a separate signal to be transmitted by said transmitter indicative of the location-based service requested.

28. The system of claim **27**, wherein the services requestable by the activation of said switch and for which the individual is charged are taken from the group consisting of emergency services, towing services, position-indicating services and tracking services.

29. The system of claim **25**, wherein said entity includes an office for arranging for the provision of the location-based service.

30. The system of claim **25**, wherein said entity includes a towing company.

31. The system of claim **25**, wherein said entity includes a tracking company.

32. The system of claim **31**, wherein said tracking company includes a vehicle tracking company.

* * * * *